SLR:LDM:KRH
F#: 2012V00377

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,

                   Plaintiff,

           - against -

TWO HUNDRED EIGHTY-NINE THOUSAND
EIGHT HUNDRED DOLLARS, MORE OR LESS,
IN U.S. CURRENCY ($289,800.00)SEIZED
FROM LUIS DAMIAN JACAS ON NOVEMBER
17, 2011;

TWO THOUSAND EIGHT HUNDRED FIFTY ONE
DOLLARS AND FIFTY FIFTY CENTS, MORE OR
LESS, IN U.S. CURRENCY $2,851.51
SEIZED FROM LUIS DAMIAN JACAS ON
NOVEMBER 17, 2011;

TWO HUNDRED EIGHTY EIGHT (288)
BOTTLES OF WINE SEIZED FROM LUIS
DAMIAN JACAS ON NOVEMBER 17, 2011 AT
Wine Care STORAGE LLC ON NOVEMBER 17,
2011;

TEN THOUSAND DOLLARS, MORE OR LESS,
IN U.S. CURRENCY ($10,000.00) SEIZED
FROM ERIC R. BRAHMS ON NOVEMBER 17,
2011;

EIGHT HUNDRED SEVENTY THREE THOUSAND
FOUR HUNDRED SEVENTY NINE DOLLARS,
MORE OR LESS, IN U.S. CURRENCY
($873,479.00) SEIZED FROM IRWIN
GUTMAN ON NOVEMBER 17, 2011; AND

EIGHT THOUSAND TWO HUNDRED DOLLARS,
MORE OR LESS, IN UNITED STATES
CURRENCY ($8,200.00) IN U.S. CURRENCY
SEIZED FROM ELLE CHONG ROZAN ON
NOVEMBER 17, 2011;

           Defendants In Rem.

VERIFIED COMPLAINT
IN REM

CV12 2173

Civil Action No.

NO SUMMONS ISSUED

JOHNSON

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

2012 MAY -2  PM 4: 08

FILED
CLERK

- - - - - - - - - - - - - - - - - - - X

Plaintiff, United States of America, by its attorney
LORETTA E. LYNCH, United States Attorney for the Eastern District
of New York, Karen R. Hennigan, Special Assistant United States
Attorney, of counsel, for its verified complaint in rem, hereby
alleges upon information and belief as follows:

### PRELIMINARY STATEMENT

1.    This is a civil in rem action to condemn and forfeit to
the exclusive use and benefit of the United States of America the
above-described property, and all proceeds traceable thereto
(together, the "Defendants In Rem"), in accordance with 18 U.S.C.
§ 981(a)(1)(C), as property constituting or derived from proceeds
traceable to violations of 18 U.S.C. § 1029 (access device fraud).

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to
28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in the Eastern District of New York pursuant
to 28 U.S.C. §§ 1355(b)(1)(A), 1355(b)(1)(B), 1395(a) and 1395(b),
because certain acts giving rise to this action occurred within
this district.

### DEFENDANTS IN REM

4.    The Defendants In Rem are comprised of the following
property:

2

    a)    Two hundred eighty nine thousand eight hundred dollars, more or less, in United States currency ($289,800.00), seized from Luis Damian Jacas ("Jacas") on November 17, 2011, at Manhattan Mini Storage in New York, New York;

    b)    Two thousand eight hundred fifty one dollars and fifty one cents ($2851.51), more or less, comprised of $2,409.00 in U.S. currency and €350.00, seized from Jacas on November 17, 2011, in New York, New York;

    c)    Two hundred eighty-eight (288) bottles of wine, seized from Jacas on November 17, 2011, at WineCare Storage LLC in Manhattan, New York;

    d)    Eight hundred seventy three thousand four hundred seventy nine dollars, more or less, in U.S. currency ($873,479.00) seized from Irwin Gutman ("Gutman") on November 17, 2011;

    e)    Eight thousand two hundred dollars, more or less in U.S. currency ($8,200.00) seized from Elle Chong Rozan ("Rozan") on November 17, 2011;

    f)    Ten thousand dollars, more or less in U.S. currency ($10,000.00) seized from Eric R. Brahms ("Brahms") on November 17, 2011;

## STATUTORY BACKGROUND

5.    Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, that constitutes or is derived from proceeds traceable to a violation constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such an offense, is subject to forfeiture to the United States of America.

6.    Pursuant to 18 U.S.C. § 1956(c)(7)(A) and 1961(1)(B),
the term "specified unlawful activity" includes acts relating to
fraud and related activity in connection with access devices.

7.    18 U.S.C. § 1029 prohibits, among other things, the
production, possession, and use of counterfeit access devices with
the intent to defraud.

### FACTS

8.    On or about November 5, 2011, the New York County
District Attorney's Office ("NYDA") contacted the United States
Secret Service ("USSS") requesting investigative assistance in a
complex American Express credit card scheme.   The initial
investigation revealed Jacas as the primary suspect operating in
New York, New York.

9.    The investigation revealed that Jacas recruited
restaurant employees working at well-known dining establishments
throughout New York, New Jersey, and Connecticut to participate in
the scheme, including, but not limited to, employees of Smith and
Wollensky, The Capital Grille, Wolfgang's Steakhouse, JoJo,
Morton's, and The Bicycle Club.

10.   Jacas paid his co-conspirators a significant amount of
money to identify victims with credit cards containing no credit
limit or high lines of credit.   These victims were typically
American Express Black or Platinum account holders.

4

11.   Jacas provided his co-conspirators with electronic
skimmer devices to collect credit card data.  In furtherance of
the scheme, the accomplices agreed to and in fact swiped the
victim credit cards through the skimmers, in order to store
encoded credit card information. The co-conspirators provided the
information obtained illegally to Jacas, who would then create
fraudulent credit cards, by downloading the victim credit card
account information and encoding the data onto counterfeit credit
card stock, then embossing the counterfeit cards with victim
names.   The fraudulent cards looked and operated like authentic
credit cards.

12.   The investigation revealed that Jacas distributed the
counterfeit cards to his co-conspirators throughout the United
States.   The accomplices used the counterfeit cards to purchase
high-end jewelry, artwork, vintage wine, clothing, and other
accessories from retail stores across the greater New York area,
including within the Eastern District of New York.  Jacas stored
the fraudulently obtained merchandise in a storage unit located at
Manhattan Mini Storage on East 62nd Street, New York, New York.
Jacas then sold the items at a discounted rate to associates of
the criminal enterprise.

Jacas Seizures

13.   On November 17, 2011, USSS agents executed a New York
State search warrant at a Manhattan Mini Storage unit maintained

under the name of Laura Martin ("Martin") and discovered $289,800.00 in U.S. currency. Video surveillance footage reveals that Jacas used the storage unit to count and store proceeds from the scheme. Prior to seizure of the funds, video surveillance footage revealed Jacas counting the currency inside the storage unit. The funds constitute proceeds of the access device fraud committed by Jacas and his co-conspirators.

14. On November 17, 2011, agents seized $2,851.51 and €350 from Jacas at his residence in New York, New York. The same day, agents seized two hundred eighty-eight (288) bottles of wine valued at approximately $43,380.00 from a unit at WineCare Storage LLC that belonged to Jacas. Upon information and belief, and based upon Jacas's lack of legitimate employment throughout the investigation, there is probable cause to believe this wine constitutes and/or is derived from proceeds of access device fraud.

## Brahms Seizures

15. The investigation revealed that Brahms participated in the scheme by acting as a "complicit customer" who knowingly ordered and received items purchased with counterfeit credit cards. Brahms recruited waiters from restaurants to participate in the scheme, conducted purchases using counterfeit credit cards and false identification documents, caused counterfeit corporate checks to be manufactured, and then used those checks to purchase

6

jewelry and other items. Brahms often assisted in the sale of the fraudulently obtained merchandise by introducing Jacas to other individuals who purchased the merchandise for a 50% discount.

16. The investigation revealed that Emily Brumfield-Brahms ("Brumfield-Brahms") ordered items from Jacas and other members of the criminal organization knowing that the merchandise would be purchased with counterfeit credit cards. The investigation further revealed that Brumfield-Brahms recruited participants into the scheme.

17. On November 17, 2011, agents executed a search warrant at the Brahms' residence in New York, New York and discovered $10,000.00 in U.S. currency. Based on the Brahms' participation in the conspiracy, surveillance of Brahms during the investigation and his lack of gainful employment, there is probable cause to believe this cash constitutes and/or is derived from proceeds of access device fraud.

Gutman Seizures

18. The investigation revealed that Gutman participated in the scheme by acting as a "fence" and sold fraudulently obtained merchandise at his business, located at 1214 Broadway, New York, NY. Agents confirmed that Gutman used cash to buy fraudulently purchased goods from Jacas at approximately 50% of their retail value. Gutman then resold the goods for a profit.

7

19.   On November 17, 2011, agents executed a search warrant

at Gutman's residence in Brooklyn, New York, and found $873,479.00

in U.S. currency in a suitcase in the back of a closet in the

apartment.   Upon information and belief, and based upon Gutman's

role in the investigation, this cash constitutes and/or is derived

from proceeds of access device fraud.

## Rozan Seizure

20.   Rozan participated in the scheme by purchasing goods

from Jacas that were obtained with the fraudulent credit cards.

Video surveillance footage from the Manhattan Mini Storage

revealed Rozan with Jacas on numerous occasions during the course

of the investigation.   The video surveillance footage further

revealed Rozan departing the storage facility with multiple bags

from high-end stores where the fraudulent credit cards were used

to purchase goods.   Rozan then offered the goods for sale on-line.

21.   On November 17, 2011, agents served a search warrant on

Rozan's business and recovered high-end goods traceable directly

to Jacas.   The investigation further revealed that Rozan paid cash

for illegally purchased goods from Jacas.

22.   Jacas, Rozan, Brahms, Brumfield-Brahms, and Gutman,

among others, were indicted in New York County for criminal

violations including enterprise corruption, scheme to defraud,

grand larceny, attempted grand larceny, petit larceny, criminal

possession of forgery devices and forged instruments, conspiracy,

8

and criminal possession of stolen property. The criminal case is currently pending.

## CLAIM FOR RELIEF

23. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 24 as if set forth fully herein.

24. The Defendants In Rem are properties that both constitute and are derived from proceeds traceable to violations of 18 U.S.C. § 1029 (access device fraud).

25. As a result of the foregoing, the Defendants In Rem are liable to condemnation and forfeiture to the United States in accordance with 18 U.S.C. §§ 981(a)(1)(C).

WHEREFORE, Plaintiff requests that a warrant of this Court be issued for the arrest of the Defendants In Rem; that notice of these proceedings be given to all interested persons; that the Defendants In Rem be forfeited and condemned to the use of the United States of America; that Plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper.


Dated: Brooklyn, New York
     May _____ , 2012

                        LORETTA E. LYNCH
                        United States Attorney
                        Eastern District of New York
                        Attorney for the United States
                        271 Cadman Plaza East
                        Brooklyn, NY 11201

By: _____
Karen R. Hennigan
Sp. Assistant U.S. Attorney
(718) 254-6254

VERIFICATION

I, JASON LEVINE, hereby verify as follows:

1.    I am a Special Agent with the United States Secret
Service ("USSS") for approximately two years, currently assigned
to the New York Field Office, Credit Card Fraud Squad.

2.    I have read the within Verified Complaint In Rem and
know the contents thereof.

3.    I believe the matters contained in the complaint are
true based upon my knowledge or based upon information and
belief.  The source of my information and the grounds of my
belief are personal knowledge and the official files and records
of USSS and other federal and state agencies.

I declare under penalty of perjury that the foregoing is
true and correct to the best of my knowledge, information and
belief.

Dated:    Brooklyn, New York
          May  ∂  , 2012

                                    Jason Levine
                                    Special Agent
                                    United States Secret Service